Southern Kansas Railway Company of Texas v. J. C. Vance.

No. 2125.    Decided February 8, 1911.

**Eminent Domain—Jurisdiction—Carson County.**

The Act of May, 1899 (Laws, 26th Leg., p. 260) limiting the jurisdiction of the County Court of Carson County to probate matters and transferring its jurisdiction over other causes civil and criminal to the District Court, did not affect the jurisdiction over condemnation proceedings under the right of eminent domain. That Act is to be construed in connection with the statute providing that county courts should have jurisdiction in matters of eminent domain and that this should not be affected by Acts transferring their civil jurisdiction in general to the District Court (Act of March 31, 1885, Laws, 19th Leg., p. 77; Rev. Stats., 1895, art. 1166). The Legislature had power under the Constitution to confer this jurisdiction on county courts. (Pp. 91, 92.)

Question certified from the Court of Civil Appeals for the Second District, in an appeal from Carson County.

*Terry, Cavin & Mills* and *Hoover & Taylor,* for appellant.—The District Court had no jurisdiction over this appeal. Sayles' Statutes, arts. 4467, 4468, 4469, Act 1901, page 46, and Act 1901, page 20; Constitution, art. V, sec. 22; Taylor v. Travis County, 77 Texas, 333; Huggins v. Hart, 56 S. W., 944, 23 Texas Civ. App., 404; Miller v. Willbarger County, 26 S. W., 245; Karnes County v. Nichols, 54 S. W., 656; Gulf, C. & S. F. Ry. Co. v. Tacquard, sec. 141, 3 C. of A., C. C. (Willson).

*Joseph N. Haney,* for appellee.—If·appellant resorted to void

proceedings to secure possession of appellee's premises, or if it took possession of appellee's premises and constructed its road thereon without first complying with the terms of the law authorizing it to so take such possession, it was a trespasser, subject to a suit of trespass to try title and for damages in the District Court; and it was proper for the court to settle all these issues in this suit. Railway Co. v. Benitos, 59 Texas, 326; Railway Co. v. Ortiz, 75 Texas, 602; Gregory v. Railway Co. 22 Texas Civ. App., 241.

MR. JUSTICE RAMSEY delivered the opinion of the court.

The question to be decided in this case in thus well stated in the certificate from the Court of Civil Appeals for the Second Supreme Judicial District:

"The above cause now pending before us on appeal from the District Court of Carson County is a condemnation proceeding begun by the Southern Kansas Railway Company of Texas, a railway corporation, before appraisers appointed by the Honorable District Judge of Carson County, from whose award the defendant Vance, appealed to the District Court of Carson County where the case was tried, resulting in a verdict and judgment in the defendant's favor for nine hundred dollars damages, from which the plaintiff has appealed. By Act of the Twenty-Sixth Legislature (General Laws of Texas, 1899, page 260) the jurisdiction of the County Court of Carson County was in some respects diminished and that of the District Court correspondingly enlarged. Appellant contends that the appellate jurisdiction of the County Court in condemnation proceedings, being a special jurisdiction and not a part of the ordinary constitutional jurisdiction of that court, the Act of the Twenty-Sixth Legislature referred to did not have the effect to deprive that court of jurisdiction over this appeal. In view of the very language of that Act and the apparent intention of the Legislature evidenced by article 1166 (General Laws of Texas, 1885, page 77) that jurisdiction of the County Court in matters of eminent domain shall not be affected by such Acts, we are not satisfied as to the point thus raised, and since, at all events, the cause must be reversed for errors committed on the trial, we deem it proper to certify for your decision whether or not the District Court had jurisdiction of the cause."

To this question we answer: The jurisdiction of the County Court of Carson County, in respect to matters of eminent domain was not affected by the Act of the Legislature diminishing its general jurisdiction.

By the terms of the Act of the Nineteenth Legislature, approved March 31, 1885, it was provided, "that all county courts whose civil jurisdiction has been heretofore, or may hereafter be diminished by law, to such extent as to no longer be able to exercise jurisdiction in matters of eminent domain shall, in addition to the powers and jurisdiction now lawfully exercised by them, be clothed with full jurisdiction in and over all matters of eminent domain over which the county courts have jurisdiction by the general laws of this State." This same provision, in substance, was carried into the Revised Statutes of 1895, where as article 1166, we find the following: "Where

the jurisdiction of the County Court of the several counties of this State has been taken away, altered or changed by existing laws, the same shall remain as established until otherwise provided by law; provided, however, that jurisdiction shall obtain in all matters of eminent domain over which the County Courts have jurisdiction by the general laws of this State." At that time, as now, the law provided that Commissioners in condemnation proceeding should be appointed by the County Judge in the counties where the land sought. to be condemned was situated. The law also provided then, as now, that if either party was dissatisfied with the award of the Commissioners, such party should file his objections thereto with such County Judge and that thereupon the issues so raised should be tried in the County Court as in other civil cases; and this without reference to or any limitation upon the amount claimed or in controversy. This grant of power to the County Court to hear and determine suits which might in amount greatly exceed its general jurisdiction was sustained under section 22 of article V of the Constitution, which is as follows: "The Legislature shall have power, by local or general law, to increase, diminish or change the Civil or Criminal jurisdiction of County Courts; and in cases of any such change of jurisdiction the Legislature shall also conform the jursdiction of other courts to such change," and it was held (Gulf, C. & S. F. Ry. Co. v. Tacquard, 3 W. & W., sec. 141) that under this broad grant of power the Legislature did not exceed its constitutional authority in conferring upon the County Courts the jurisdiction in question.

And it was in reference to and presumably in consideration of these statutes that the Legislature in 1899, passed an Act diminishing the jurisdiction of the County Court of Carson County. We deem it unnecessary to set out this Act in full, but it may be sufficient to say that if this Act stood alone it could well be held sufficient to include any controversy or litigation such as this. But we think, construing the Act of 1899 in connection with the provisions above quoted, which fix and place in the County Courts jurisdiction in matters of eminent domain, notwithstanding the general jurisdiction of such courts has been diminished, that it was the evident purpose and intention of the Legislature to continue in the County Courts all the power and jurisdiction, as to eminent domain, which they had theretofore possessed. This construction not only is, as we believe, the correct construction of the statutes in question, but one which harmonizes all the parts of our statutes having any relation to eminent domain. A careful examination of the question has led us to believe that the intention of the Legislature, construing the statutes altogether, is clear and manifest.